United States District Court
Southern District of Texas
**ENTERED**
April 09, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TERRY SINEGAL, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:18–CV–00360 |
| | § | |
| MARTIN MARIETTA MATERIALS, | § | |
| INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendant's Motion for Summary Judgment.  *See* Dkt. 39. After reviewing the motion, the response, the reply, and applicable law, I recommend that the motion be **GRANTED**.

## BACKGROUND

During the relevant time period, Plaintiff Terry Sinegal ("Sinegal") worked for Martin Marietta Materials, Inc. ("Martin Marietta") as the Assistant Plant Manager of the PTF Plant, one of the two plants the company operates in Freeport, Texas.  In that role, Sinegal was responsible for running the day-to-day operations of the PTF Plant, supervising employees, and ensuring on-site safety.

Project Manager Jim Barker ("Barker") oversaw Martin Marietta's entire Freeport operations.  Shortly after Sinegal took over as Assistant Plant Manager at the PTF plant in March 2016, several employees complained to Barker that Sinegal was sleeping on the job.  This is a serious allegation since Martin Marietta has a zero-tolerance policy against

sleeping on the job.  It is clear that Sinegal knew all about this policy because he signed an acknowledgement form, which expressly stated: "Sleeping on the Job is enforced at a 'Zero Tolerance' level, and that termination of employment may result from a first violation."  Dkt. 39-2 at 14.

When handling employee complaints, it is Martin Marietta's practice to have a member of management on-site to collect employee statements and any available evidence.  Once this is done, the member of management reaches out to the Human Resources and Safety Manager, who then "take[s] over the investigation, which includes interviewing witnesses, drafting an investigative report, and making a disciplinary recommendation to the chain of command."  *Id.* at 2.  In accordance with Martin Marietta's common practice, Barker collected written statements from those employees who had witnessed Sinegal sleeping on the job.  Those statements were clear and unequivocal:

- Victor Cruz statement: "On Monday[, March] the 28th[,] I was running the loader and I saw [] Sinegal park by the waste pile in [the] company pickup.  He was their [sic] for at least 1 hrs [sic] or more.  He was asleep.  In the truck and lots of time." *Id.* at 38.

- David Polasek statement: "I had seen Terry Sinegal sleeping between the material piles at PTF.  He was asleep in the company truck. And during the time that Terry was supposed to be training someone to batch he was leaving PTF for a couple hours at a time and leaving his trainee alone." *Id.* at 39.

- Gwendolyn Preston ("Preston") statement: "Numerous times, I have seen [Sinegal] sleeping in the office.  While at work and on duty, [] it's unprofessional and most importantly unsafe! . . .  I have woken him up several times, but he will eventually fall back asleep." *Id.* at 30.

Preston not only saw Sinegal sleep during the workday, but she actually snapped a couple of photos and captured a video of Sinegal snoozing on the job.  Preston provided the photos and video to Barker.

On April 4, 2016, Barker notified Diana Carias, Martin Marietta's Human Resources and Safety Manager for the Houston and Freeport areas, that several employees had complained that Sinegal was sleeping on the job.  At this juncture, Carias took over the investigation.  She reviewed the written statements, the photos, the video, and conducted in-person interviews of several Martin Marietta employees, including Sinegal.  Preston told Carias that "Sinegal slept on the job, especially when there were no trucks to load.  [Preston] explained that [Sinegal] fell asleep fast, snored, and was not easily awoken by merely calling his name." *Id.* at 5.  Cruz told Carias that "Sinegal fell asleep at work a lot and [Cruz] knew he was asleep because Sinegal's mouth would usually be open, indicating he was sleeping." *Id.* at 6.  Carias also interviewed Sinegal.  Confronted with the photos which appeared to show him catching a few zzzzs on the job, Sinegal denied he was sleeping.  He claimed he was simply "resting his eyes." *Id.* at 5.  At the end of the interview, Carias notified Sinegal that, given the serious nature of the charges, he was suspended effective immediately pending the outcome of the investigation.

Based on her interviews, the written statements, and the photographic/video evidence, Carias did not find Sinegal credible.  She concluded that Sinegal had been sleeping on the job in violation of the Zero-Tolerance Policy and decided to recommend up the chain of command that Sinegal be terminated.

On April 6, 2017, after Carias had concluded her investigation but before she formally made the termination recommendation, Sinegal called Carias.  He claimed Barker and Preston were conspiring to get him fired and alleged that they were having an intimate relationship.  This is the first time Sinegal had made any such allegations.  On April 7, 2016, Sinegal submitted a letter "lodg[ing a] formal complaint against my boss, Mr. Jim Barker [and] another employee Gwendolyn Preston." *Id.* at 37.  These new allegations did not impact Carias's investigation into whether Sinegal was sleeping on the job.   Another Human Resources employee spearheaded a completely separate investigation into Sinegal's allegations of misconduct toward Barker.

On the night of April 7, 2016, Carias emailed her findings to her boss, District Human Resources Manager Terry Doyle.  He forwarded the materials to several other senior members of management, and a conference call was held with senior management on April 8, 2016, to discuss whether Sinegal should be fired.  The group—which did not include Barker—concluded that termination was appropriate given the violation of the Zero-Tolerance Policy against sleeping on the job.  This was hardly a surprising decision, given that Martin Marietta has terminated other employees for sleeping on the job.  As Carias noted in her declaration filed in support of the Motion for Summary Judgment: "To date, I do not know of any employee who was found to be sleeping at work and not fired." *Id.* at 4.

Unhappy with Martin Marietta's decision to fire him, Sinegal, acting *pro se*, filed this lawsuit for retaliation under Title VII of the Civil Rights Act of 1964 and Texas law.  Sinegal alleges that he was improperly terminated because he encouraged a female

4

employee to report claims of sexual harassment to Martin Marietta's Human Resources Department.  United States District Judge George C. Hanks, Jr. dismissed Sinegal's Title VII claim for failure to exhaust administrative remedies.  *See* Dkt. 37.  Martin Marietta now moves for summary judgment on the remaining Texas Commission of Human Rights Act ("TCHRA") cause of action.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(a).  A dispute over a material fact is "genuine" only if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).   The moving party need only alert the Court that there is an absence of evidence in support of one or more elements essential to the plaintiff's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000) (quotation marks and citation omitted).   Conclusory allegations, unsubstantiated assertions, improbable inferences, and legal arguments are insufficient to withstand a motion for summary judgment.  *See Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

5

## OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

Before considering the merits of the Motion for Summary Judgment, I must address Martin Marietta's objections to Sinegal's summary judgment evidence. *See* Dkt. 41. Martin Marietta objects to specific portions of the declaration Sinegal submitted in connection with his response, as well as a Texas Workforce Commission Determination on Payment of Unemployment Benefits.

The one objection I want to specifically address is Martin Marietta's request that I strike paragraph 16 of Sinegal's declaration. In that portion of the declaration, Sinegal states:

> I ask Gerome [a friend who worked for Martin Marietta] how did Jim [Barker] find out about me giving Arien [another Martin Marietta employee] advice. Jim told Gerome that Gwendolyn [Preston] overheard me and Arien talking in the batch office. I ask Gerome is this why Jim wants to get rid of me, Gerome said yes. I ask Gerome why is Gwendolyn helping Jim, because Jim told her that you wanted to get rid of her, and that pissed her off.

Dkt. 40-1 at 6. Martin Marietta objects to this section on the grounds of hearsay, or more specifically, triple hearsay. Hearsay statements are inadmissible because they are considered inherently unreliable. Where, as here, you have hearsay within hearsay within hearsay (that is, triple hearsay), the trustworthiness of the statements is about as reliable as a broken clock. *See In re DePugh*, 409 B.R. 84, 123 (S.D. Tex. Bankr. 2009) ("These statements are triple hearsay, which is manifestly unreliable and will not be considered by the Court."). Accordingly, I sustain Martin Marietta's hearsay objection to paragraph 16 of the Sinegal declaration and strike that portion from the summary judgment record.

As far as the other objections lodged by Martin Marietta are concerned, my holding in this case does not depend on the content of the evidence to which the objections were made, so I overrule those objections as moot.

## DISCUSSION

The TCHRA prohibits an employer from retaliating against an employee for engaging in certain protected activities. *See* TEX. LAB. CODE § 21.055. Protected activities consist of: (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner of investigation, proceeding, or hearing. *See id.* To establish a prima facie case of retaliation under the TCHRA, "a plaintiff must show that (1) [he] participated in an activity protected under the statute; (2) [his] employer took an adverse employment action against [him]; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). Because the TCHRA is modeled after federal law, "courts look to analogous federal precedent for guidance when interpreting the [TCHRA]." *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 473–74 (5th Cir. 2006) (internal quotation marks and citation omitted).

Plaintiffs may establish retaliation through either "direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "Direct evidence is evidence which, if believed, proves the fact without inference or presumption." *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). "[D]irect evidence is rare." *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328

(5th Cir. 1994). Sinegal claims that there is direct evidence of retaliation based on an alleged statement made by Gerome that Barker told him that he (Barker) was upset because Preston overheard Sinegal tell another employee to report harassment to human resources. As noted above, I have struck this statement as triple hearsay. But, even if I were to consider this testimony, it is "a far cry from what [the Fifth Circuit has] previously found to be direct evidence of discrimination." *Clark v. Champion Nat'l Security, Inc.*, 952 F.3d 570, 579 (5th Cir. 2020). Such a statement is not direct evidence because it requires an inference that Barker's purported anger toward Sinegal prompted Barker to eventually fire Sinegal.

When, as in this case, there is no direct evidence of retaliation, a plaintiff must prove a TCHRA claim using circumstantial (or indirect) evidence pursuant to the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gorman v. Verizon Wireless Tex., LLC*, 753 F.3d 165, 170–71 (5th Cir. 2014) (applying *McDonnell Douglas* burden-shifting scheme to the TCHRA); *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (same). Under this rubric, the plaintiff must first meet the minimal burden of establishing a *prima facie* case of retaliation. *See Reed*, 701 F.3d at 439. If a plaintiff successfully establishes the elements of a *prima facie* case, the burden of production then shifts to the employer to articulate a legitimate, non-retaliatory reason for the challenged employment action taken. *See id.* Once an employer asserts such a reason, the inference of retaliation raised by the *prima facie* showing drops from the case. At this point, summary judgment is appropriate

unless the plaintiff raises a genuine dispute of material fact that the employer's rationale is pretextual.  *See McDonnell Douglas,* 411 U.S. at 801–03.

In seeking summary judgment, Martin Marietta advances two arguments.  First, Martin Marietta posits that Sinegal cannot establish a *prima facie* case of retaliation under the TCHRA.   Second, Martin Marietta claims that even if Sinegal could demonstrate a *prima facie* case of retaliation, summary judgment is still appropriate because Sinegal cannot demonstrate that Martin Marietta's proffered reason for his termination is a pretext for retaliation.   Because I find this second argument both persuasive and dispositive, I will simply assume for the purposes of this Memorandum and Recommendation that Sinegal has put forward a *prima facie* case of retaliation under the TCHRA.

As noted, once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to state a legitimate, non-retaliatory reason for the challenged employment action.  In this case, Martin Marietta terminated Sinegal's employment after three employees complained that they had witnessed Sinegal sleeping on the job.  Not surprisingly, Martin Marietta's proffered reason for terminating Sinegal is that he violated company policy which expressly prohibited sleeping on the job.

Because Martin Marietta has raised a legitimate, non-retaliatory reason for discharge, the burden shifts back to Sinegal to show that Martin Marietta's proffered reason for his termination was merely a pretext for retaliation.  To meet this burden and survive summary judgment, Sinegal must demonstrate that he would not have been terminated "but for" engaging in protected activity.  *See Sherrod v. Am. Airlines, Inc.,*

132 F.3d 1112, 1123 (5th Cir. 1998).  At the pretext stage, the burden on Sinegal is stout.
*See Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 685 (5th Cir. 2001).  Sinegal must
reveal "a conflict in substantial evidence on the ultimate issue of retaliation in order to
withstand a motion for summary judgment."  *Sherrod*, 132 F.3d at 1122.

Sinegal's claim of retaliation in this case is based on nothing more than pure
speculation and conclusory allegations.  He asserts that Barker and Preston engaged in
some sort of grand conspiracy to have him fired for encouraging a co-employee to report
sexual harassment claims.   These serious charges are supported only by Sinegal's
subjective beliefs, not objective facts.  Standing alone, an employee's subjective belief
that he was subjected to retaliation is insufficient to demonstrate pretext and defeat
summary judgment.  *See Kennerson v. Guidry*, 135 F. App'x 639, 641 (5th Cir. 2005) (A
"plaintiff's subjective belief [that he has been retaliated against is] an insufficient defense
to a summary judgment motion."); *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d
802, 823 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ("[A]n employee's
subjective beliefs of retaliation are merely conclusions and do not raise a fact issue
precluding summary judgment in a retaliatory discharge claim.") (quotation marks and
citation omitted).

The uncontroverted summary judgment evidence establishes that Martin
Marietta's Human Resources Department conducted a thorough investigation into
allegations by three separate employees (supported by photographic and video evidence)
that Sinegal slept on the job.  Only after the Human Resources Department concluded its
investigation and determined termination was appropriate did Sinegal first raise the

specter that his supervisor was conspiring to terminate his employment.  Significantly, the supervisor (Barker) whom Sinegal complains conspired to fire him was not even involved in the decision-making process to terminate Sinegal's employment.

Sinegal suggests that his recent promotion and favorable performance reviews provide evidence that Martin Marietta's decision to termination him was a pretext for retaliation.  This argument completely misses the boat.  There is no question that Sinegal had been promoted and that he was a good employee.  Those two undisputed facts, however, do not establish pretext because they have nothing whatsoever to do with why he was terminated.  Sinegal was fired because he violated a zero-tolerance policy by sleeping on the job, a decision that was wholly unrelated to his recent promotion or work performance.

Next, Sinegal declares, without any supporting evidence, that the three co-worker complaints of him sleeping were "'a sudden and unprecedented campaign to document' [his] alleged conduct, and this evidence is sufficient to raise an inference of pretext and to defeat summary judgment."  Dkt. 40 at 7.  Not so fast.  There is simply no summary judgment evidence that indicates there was anything untoward or "unprecedented" in three employees coming forward and complaining that a co-worker violated company policy by sleeping on the job.  Mere conclusory allegations, such as those raised by Sinegal, are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

Sinegal also claims that Martin Marietta's articulated reason for his termination is pretextual because the sleeping on the job policy did not apply to him as an exempt special project employee.  This argument flies in the face of the "sleeping on the job" acknowledgment form that Sinegal dated and signed.  That document expressly states that Sinegal may be terminated for sleeping on the job, and does not say anything about special project employees being exempt from the no sleeping policy.  Moreover, there is specific testimony presented by Carias that the company policy against sleeping on the job specifically applied to Sinegal.  *See* Dkt. 39-2 at 3 ("As Assistant Plant Manager, . . . [a]ll Martin Marietta policies, including the Zero-Tolerance Policy against sleeping on the job . . . applied to Sinegal.").  The only evidence to support Sinegal's claim that he was exempt from the no sleeping policy is his declaration.  Usually, such a sworn statement would be sufficient to avoid summary judgment by creating a fact issue on whether the no sleeping policy applied to Sinegal.  The problem with that statement in this case is that it directly contradicts Sinegal's prior deposition testimony.  At deposition, Sinegal testified:

> Q.     [Y]ou understand that if you were caught sleeping on the job or if anyone at Martin Marietta was sleeping on the job, that's considered a zero tolerance policy violation, correct?
>
> A.     Correct.

Dkt. 54-1 at 4–5.  "It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony."  *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996).

"Under the sham affidavit doctrine, a district court may refuse to consider statements made in an affidavit that are so markedly inconsistent with a prior statement as to constitute an obvious sham." *Winzer v. Kaufman Cty.*, 916 F.3d 464, 472 (5th Cir. 2019) (internal quotation marks and citation omitted). Here, Sinegal provides no explanation as to the obvious contradiction between his deposition testimony and the declaration. As such, I view the portion of the declaration that suggests the no sleeping policy is inapplicable to Sinegal as a sham, and disregard that testimony.

In sum, even giving Sinegal the benefit of the doubt, as I am required to do at the summary judgment stage, he has failed to meet his burden and produce evidence from which a jury could conclude that Martin Marietta's articulated reason for his termination was pretextual.

## CONCLUSION

For the reasons stated above, I **RECOMMEND** that Defendant's Motion for Summary Judgment (Dkt. 39) be **GRANTED** and this case be dismissed.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED in Houston, Texas, this 9th day of April, 2020.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE